Case 3:04-cr-02521-R   Document 5   Filed 11/10/04   Page 1 of 8

USDC SCAN INDEX SHEET










GEP     11/18/04     16:03

3:04-CR-02521    USA V. LIERSCH

*5*

*CRMGOV.*

1 | KEVIN V. RYAN (CSBN 118321)
United States Attorney

2

EUMI CHOI (WVBN 0722)
3 | Acting Chief, Criminal Division

4 | MARK N. ZANIDES (CSBN 58717)
Special Assistant United States Attorney

5

6 | 450 Golden Gate Avenue
San Francisco, California 94102
Telephone: (415) 436-7167
7 | Telefacsimile: (415) 436-7234

FILED

04 NOV 10 PM 1:40

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JOHN S. RHOADES)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 04CR2521-JSR |
| Plaintiff, | |
| v. | JOINT MOTION FOR ORDER GRANTING CONTINUANCE AND SPEEDY TRIAL FINDING |
| ANDREW F. LIERSCH, | |
| Defendant. | |

The United States, by Special Assistant United States Attorney Mark Zanides, and defendant Andrew F. Liersch, through his counsel, Steven F. Hubachek of Federal Defenders of San Diego, Inc., hereby jointly move the Court for an order finding that the period of time from October 25, 2004, through January 17, 2004, should be excluded in computing the time within which the trial of the defendant must commence under 18 U.S.C. §§ 3161(h)(8)(A) and (B)(2), because the ends of justice served by taking such an action outweigh the interests of the public and the defendant in a speedy trial in this complex case. In support of this motion, the parties aver as follows.

1.      **Factual Background of the Case**

The indictment charges the defendant with committing two money laundering offenses with funds obtained by fraud from Goodwill Industries, Inc., of Santa Clara County while Liersch was its President. For purposes of this motion, and to demonstrate the complexity of the record to be

5

reviewed by new defense counsel, the government has stated that it intends to prove the following at trial. The defense disputes these allegations, but agrees that the following does set forth the factual contentions that the government believes support its theory of the case.

Goodwill Industries of Santa Clara County (Goodwill), is a non-profit, charitable organization, which collects donated goods from the community and sells those goods through retail outlets. Goodwill has a national charter but is organized on a county wide basis and governed by a President and other officers who report to a Board of Directors. Revenue generated from these sales is used to provide job training to handicapped and underprivileged persons.

In 1976 Andrew Liersch became president of Goodwill and remained President until his retirement in late 1993. Between the early 1970's and 1997 Carol Marrs was the director of the retail stores and reported to Liersch. Fay Marcil began working in the mid 1970's as the director of one store, and became an aide of Marrs.

Beginning sometime in the latter part of 1978 Liersch entered into a conspiracy with Carol Marrs and others to defraud Goodwill. The scheme was simple in concept and extensive in its execution. In short, donated goods were sold and the cash generated as a result of the sales was shared by the coconspirators, including Carol Marrs and Andrew Liersch. After the scheme was discovered, Goodwill management obtained an audit which suggested that between $15 and $20 million had been stolen during this fraud.

The indictment alleges that as a part of the scheme, from at least in or about 1988 to in or about September of 1997, on a weekly basis conspirator Faye Marcil delivered envelopes containing $3000 in cash proceeds of the foregoing fraud to Carol Marrs, who in turn gave the cash to defendant Liersch.

In order to corroborate Marcil's testimony, the government intends to prove that Liersch's domestic bank cash deposits far exceeded his salary and any other known legitimate sources of income. Liersch regularly deposited significant amounts of cash into accounts he held at First Interstate Bank and the Wells Fargo Bank in California.

//

//

First Interstate Bank records reflect that during the period from July 26, 1988, through August 29, 1990, Liersch deposited in cash a total of $101,575 or, on average, $1,000 per week.

Security Pacific Bank records reflect that during the period from January 29, 1991, through April 13, 1993, Liersch deposited in cash a total of $364,940 or, on average[,] $3,200 per week.

Both the First Intersate Bank account and the Security Pacific Bank account were opened in Liersch's name alone. None of the funds deposited into the accounts was reported on the relevant tax returns.

Wells Fargo Bank records reflect that on approximately ten occasions between October 1990, and June 1993, Liersch deposited in cash an additional $49,560. The Wells Fargo Bank account was in the name of Eagle Grey Farms, a business Liersch owned which purported to raise racehorses.

These deposits constituted the first of a series of steps taken by Liersch to launder the stolen funds. All occurred within the Northern District of California.

The government will also offer evidence that between December of 1991 and April of 1993 Liersch transferred stolen funds to a Dean Witter account in San Jose, within the Northern District of California. On May 28, 1993, he used approximately $360,000 in stolen funds, among others, to purchase a $450,000 annuity with Elvia Life Insurance Company based in Geneva, Switzerland. The funds were transferred at Liersch's direction from the Northern District of California to Geneva. This transfer was allegedly in violation of 18 U.S.C. § 2314, and constitutes a specified unlawful activity which is a predicate for the money laundering charged in the indictment.

On September 28, 1995, Liersch directed that the annuity be sold and the monies transferred to the Union Credit Bank in Lugano, Switzerland.

Thereafter, counts one and two of the indictment charge that these funds (among others) were transferred to another account at the Union Credit Bank of Switzerland, thence to the Anglo Irish Bank in Vienna. The government proposes to prove that the order to transfer the funds described in counts one and two came from San Diego, California.

In addition, the government intends to offer evidence that, apart from and in addition to the $360,000 in stolen funds invested in Dean Witter, additional stolen funds in the approximate amount of $215,000 were used by Liersch to purchase Grey Eagle Farms, a ranch located in the Eastern District of California. The monies used to purchase Grey Eagle came from the Dean Witter account in San Jose and were based on instructions given by Liersch while in the Northern District.

On July 26, 1993 the defendant sold Grey Eagle, and directed that the $239,991 in proceeds be sent from California to an account he had opened at the Anglo Irish Bank in Vienna, Austria.

In 1993, the defendant gave his former girlfriend, Jo Anne Krause, nearly $200,000 in cash proceeds of the fraud and asked her to deposit the funds into two joint, non-interest bearing, bank checking accounts that he had Krause open in San Diego, California. In April of 1994, the defendant directed Krause to write two checks for the balances in each account. The defendant directed Krause to prepare and sign both checks. On or about April 20, 1994, the defendant caused approximately $199,000 to be mailed from San Diego to an account he had set up with the Royal Trust Bank (later called the Allied Irish Bank), in Vienna, Austria. This transfer was in violation of 18 U.S.C. § 2314, and constitutes a specified unlawful activity which is a predicate for the money laundering charged in the indictment. The instructions to make this transfer of funds came from San Diego, California.

Ultimately, the defendant directed that the stolen funds used to purchase Grey Eagle were sent to the Anglo Irish Bank, then on to the Union Credit Bank of Switzerland, then back to the Anglo Irish Bank.

Similarly, the defendant directed that the funds laundered through the Krause/Liersch accounts be transferred from the Anglo Irish Bank to the Union Credit Bank of Switzerland then back to the Anglo Irish Bank.

When all of the stolen funds laundered through the three different mechanisms [Elvia Life Insurance Annuity, Grey Eagle Farms, and the Krause/Liersch accounts] had accumulated in the Anglo Irish Account (no 243.369) in Vienna, on March 12, 1998, the defendant directed that $160,000 be transferred to an account opened in the name of the Northern Arizona Enterprises.

The defendant also directed that $200,000 be sent to an account opened at the Royal Bank of Scotland in the Isle of Man. His instructions are believed to have been sent from Guatemala.

**2.        Procedural Background of the Case**

On July 25, 2002, Liersch was indicted in case number CR 02-40140 SBA the U.S. District Court for the Northern District of California on five counts of money laundering in violation of Title 18, U.S. Code, § 1956 (a)(1)(b)(I).[1] On 14 November 2002, Liersch was charged in a superseding indictment that added a notice of forfeiture regarding laundered funds believed to be in the Isle of Man and Austria. On May 23, 2003, Liersch was arrested in the United States after being deported from Guatemala.

After a number of bail hearings, and in the absence of funds or other property to secure his release, Liersch remained in custody until September 17, 2004. At that time the defendant was released to a halfway house within the Northern District of California.

On motion of the United States, the Northern District indictment was dismissed on the morning of September 24, 2004. Later that morning the instant indictment was returned by a grand jury in this District.

The defendant initially appeared before the Magistrate Judge in this District on the morning of October 25, 2004, and first appeared before the District Court that afternoon.

In view of the facts that this case involves over 10,000 pages of discovery, and complex issues of fraud and money laundering, that the fraud allegedly extended over a period of approximately twenty years, and in view of the fact that Mr. Hubachek was first appointed to this case on October 25, 2004, it is, we submit, unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by the Speedy Trial Act. As a result, the requested exclusion of time serves the ends of justice and otherwise outweighs the interests of the public and the defendant in a speedy trial. *See* 18 U.S.C. § 3161(h)(8)(A). Moreover, the case itself is complex, due to the nature of the prosecution -- including the amount of discovery, the

---

[1] By Order dated 1 December 2003, the Honorable Saundra Brown Armstrong, dismissed count four of the indictment on grounds of improper venue and dismissed part of count five on similar grounds.

amount of time covered in the government's allegations, and the nature of the financial transactions themselves -- and that complexity also serves to justify the proposed exclusion of time. *See* 18 U.S.C. § 3161(h)(8)(B)(ii).

At this time, the parties request only an exclusion of time until January 17, 2005. The parties anticipate that prior to that date, the defense will file motions relating to the indictment, and that the defense will have had an opportunity to review enough materials to allow a meaningful assessment of when pretrial proceedings can be completed, and when the trial can begin.

Dated: November 8, 2004

STEVEN F. HUBACHEK
Attorney for Defendant Andrew F. Liersch

Dated: November 8, 2004

MARK ZANIDES
Special Assistant United States Attorney

1 amount of time covered in the government's allegations, and the nature of the financial transactions
2 themselves -- and that complexity also serves to justify the proposed exclusion of time. *See* 18 U.S.C.
3 § 3161(h)(8)(B)(ii).
4       At this time, the parties request only an exclusion of time until January 17, 2005. The
5 parties anticipate that prior to that date, the defense will file motions relating to the indictment, and
6 that the defense will have had an opportunity to review enough materials to allow a meaningful
7 assessment of when pretrial proceedings can be completed, and when the trial can begin.

Dated: November 8, 2004

STEVEN F. HUBACHEK
Attorney for Defendant Andrew F. Liersch

Dated: November 8, 2004

MARK ZANIDES
Special Assistant United States Attorney